Timothy Dunlap,

        Petitioner,

v.

David Paskett, Warden,

        Respondent.

Case No. 1:99-cv-559
Judge Michael H. Watson
Magistrate Judge Elizabeth P. Deavers

## OPINION AND ORDER

Timothy Dunlap ("Petitioner"), a prisoner sentenced to death by the State of Ohio and State of Idaho, has before this Court a recently reactivated habeas corpus action pursuant to 28 U.S.C. § 2254. This matter is before the Court upon Petitioner's Motions to Amend Habeas Petition and to Stay Proceedings and Hold Them in Abeyance Pending Exhaustion in State Court. ECF Nos. 146 and 147. Also before the Court are Respondent-Warden's Memoranda in Opposition and Petitioner's Replies in Support. ECF Nos. 148, 149, 152, and 153. For the reasons that follow, Petitioner's *Hurst*-based motions are **DENIED**, while Petitioner's evidence-based motion is **DENIED WITHOUT PREJUDICE**, subject to reconsideration.

## I. OVERVIEW

This case arises out of Petitioner's conviction for the October 6, 1991 capital murder of his girlfriend, Belinda Bolanos, in a Cincinnati park area, and Petitioner's resulting death sentence. Petitioner is also under sentence of death

by the state of Idaho for his October 16, 1991 capital murder of teller Tonya Crane during Petitioner's robbery of a bank in Soda Springs, Idaho.

Petitioner seeks to amend his petition both to incorporate new evidence developed earlier during these proceedings and to add a new claim alleging that Ohio's death penalty scheme is unconstitutional under the Supreme Court decision of *Hurst v. Florida*, 136 S.Ct. 616 (2016). Petitioner also seeks to have these proceedings stayed and held in abeyance while he returns to the state courts to exhaust his *Hurst* claim. With respect to Petitioner's proposed *Hurst*-based claim, Petitioner's requests are not warranted. Petitioner's *Hurst* claim cannot support habeas corpus relief. That being so, any amendment to add that claim to this petition would be futile, leaving the petition before this Court fully exhausted and not in need of stay-and-abeyance.

Petitioner's request to amend the penalty-phase ineffective assistance claim set forth in ground fourteen, essentially to add evidence developed for the first time during these proceedings, is not as easily resolved. For the reasons that follow, the Court is compelled to deny the proposed amendment at this time, due to constraints on this Court's ability to consider new evidence, which constraints Petitioner's return to state court does not appear to have lifted. A federal court may not grant habeas relief on a claim that the state courts adjudicated on the merits unless the federal court determines that the state court's adjudication contravened or unreasonably applied federal law, or involved

an unreasonable determination of the facts. In making that threshold "reasonableness" determination, federal courts may consider only the evidence that the state courts had before them. If this Court determines, based solely on the record before the state court, that the state courts' decision rejecting any part of ground fourteen was unreasonable within the meaning of 28 U.S.C. § 2254(d), then this Court may consider the newly added evidence to determine whether habeas relief is ultimately warranted and the Court would reconsider its decision not to allow the amendment. If, on the other hand, the Court concludes on the basis of the record before the state courts that their rejection of ground fourteen was reasonable, then this Court may not consider the newly added evidence, which militates against amending the petition to add the new evidence.

## II. MOTION TO AMEND

A motion to amend a habeas corpus petition is, per 28 U.S.C. § 2242, subject to the same standards which apply generally to motions to amend under Fed. R. Civ. P. 15(a). The general standard for considering a motion to amend under Fed. R. Civ. P. 15(a) was enunciated by the United States Supreme Court in *Foman v. Davis*:

> If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason--such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of any allowance of the amendment, futility of

amendment, etc.--the leave sought should, as the rules require, be "freely given."

371 U.S. 178, 182 (1962); s*ee also Fisher v. Roberts*, 125 F.3d 974, 977 (6th Cir. 1997) (citing *Foman* standard). In considering whether to grant motions to amend under Rule 15, a court should consider whether the amendment would be futile, *i.e.*, if it could withstand a motion to dismiss under Rule 12(b)(6). *Hoover v. Langston Equip. Assocs.*, 958 F.2d 742, 745 (6th Cir. 1992); *Martin v. Associated Truck Lines, Inc.*, 801 F.2d 246, 248 (6th Cir. 1986); *Commc'n. Sys., Inc. v. City of Danville*, 880 F.2d 887, 895-96 (6th Cir. 1989); *Roth Steel Prods. v. Sharon Steel Corp.*, 705 F.2d 134, 155 (6th Cir. 1983); *Neighborhood Dev. Corp. v. Advisory Council*, 632 F.2d 21, 23 (6th Cir. 1980). Likewise, a motion to amend may be denied if it is brought after undue delay or with dilatory motive. *Foman*, 371 U.S. at 182; *Prather v. Dayton Power & Light Co.*, 918 F.2d 1255, 1259 (6th Cir. 1990).

A claim added by amendment "relates back" to the date of filing of the complaint in a civil case and thereby avoids any statute of limitations bar if it "arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading . . . ." Fed. R. Civ. P. 15(c)(1)(B). The Supreme Court has applied the relation back doctrine narrowly in habeas corpus cases:

An amended habeas petition . . . does not relate back (and thereby escape AEDPA's one-year time limit) when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth.

*Mayle v. Felix*, 545 U.S. 644, 650 (2005).

### A. *Hurst*-Based Claim

Petitioner seeks to add a newly ripe claim that Ohio's capital sentencing scheme is unconstitutional under *Hurst v. Florida*. In *Hurst*, the Supreme Court held that Florida's capital sentencing scheme was unconstitutional because "[t]he Sixth Amendment requires a jury, not a judge, to find each fact necessary to impose a sentence of death." *Hurst*, 136 S.Ct. at 619. "A jury's mere recommendation," the Court continued, "is not enough." *Id*.

The *Hurst* decision stemmed from the earlier decisions of *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and *Ring v. Arizona*, 536 U.S. 584 (2002). In *Apprendi*, the Supreme Court held that any fact that can expose an accused to a greater sentence than the statutory maximum must be found by a jury. *Apprendi*, 530 U.S. at 490. In *Ring*, the Supreme Court struck down Arizona's capital-sentencing scheme because it permitted the trial judge to find an aggravating circumstance to make the accused death-eligible. *Ring*, 536 U.S. at 604.

In *Hurst*, the Supreme Court concluded pursuant to *Apprendi* and *Ring* that Florida's capital-sentencing scheme violated the Sixth Amendment. Fatal to Florida's scheme, the Supreme Court pointed out, were the fact that a jury must make a sentencing recommendation but not the specific findings necessary to make an accused death-eligible, the fact that it is for the trial judge to make those

specific findings, and the fact that a jury recommendation was not binding on the trial judge. *Id*. at 622.

In 2017, several judges within this Court and District rejected attempts by petitioners either to file second-or-successive petitions, or to amend their pending petitions, to raise a *Hurst*-based challenge to Ohio's capital sentencing scheme. *Davis v. Bobby*, Case No. 2:10-cv-107, 2017 WL 4277202 (S.D. Ohio Sep. 25, 2017) (Sargus, E., C.J.); *Lindsey v. Jenkins*, Case No. 1:03-cv-702 (S.D. Ohio Sep. 25, 2017) (Sargus, E., C.J.) (ECF No. 147); *Myers v. Bagley*, Case No. 3:04-cv-174 (S.D. Ohio Sep. 12, 2017) (Marbley, A., D.J.) (ECF No. 126); *Robb v. Ishee*, Case No. 2:02-cv-535 (S.D. Ohio Sep. 12, 2017) (Marbley, A., D.J.) (ECF No. 213); *Twyford v. Bradshaw*, Case No. 2:03-cv-906 (S.D. Ohio Sep. 12, 2017) (Marbley, A., D.J.) (ECF No. 90). *See also Gapen v. Robinson*, Case No. 3:08-cv-280, 2017 WL 3524688 (S.D. Ohio Aug. 15, 2017) (Rice, W., D.J.); *Smith v. Pineda*, Case No. 1:12-cv-196, 2017 WL 631410 (S.D. Ohio Feb. 16, 2017) (Merz, M., M.J.); *McKnight v. Bobby*, Case No. 2:09-cv-059, 2017 WL 631411 (S.D. Ohio Feb. 15, 2017) (Merz, M., M.J.). Specifically, the Judges uniformly concluded that *Hurst* did not invalidate Ohio's capital sentencing scheme, but that even if it did, *Hurst* did not apply retroactively to cases on collateral review. *See, e.g., Davis*, 2017 WL 4277202, at \*3-4.

Since then, the Ohio Supreme Court has ruled not once, but twice, that Ohio's capital sentencing scheme does not suffer from the same constitutional

flaws as the Florida law at issue in *Hurst*. *State v. Mason*, 153 Ohio St. 3d 476 (Ohio 2018), *cert. denied*, 139 S.Ct. 456 (2018); *State v. Belton*, 149 Ohio St. 3d 165 (2016), *cert. denied*, 137 S.Ct. 2296 (2017). And the Court of Appeals for the Sixth Circuit has held that *Hurst* does not apply retroactively to cases on collateral review. *In re Coley*, 871 F.3d 455, 457 (6th Cir. 2017) (*per curiam*).

In *State v. Belton*, Belton had pleaded no contest to charges of aggravated robbery and aggravated murder, and was sentenced to death by a three-judge panel. On direct appeal, Belton argued that under *Apprendi* and *Ring*, " 'even if a capital defendant enters a guilty plea to Aggravated Murder and the accompanying death specifications, he has a right to a jury trial to determine the existence of any mitigating factors and to determine whether the aggravated circumstance or circumstances to which he would plead guilty outweigh those factors by proof beyond a reasonable doubt.' " *Belton*, 149 Ohio St. 3d at 175. After briefly discussing *Apprendi* and *Ring*, the Ohio Supreme Court noted, "[m]ore recently, the Supreme Court applied *Apprendi* and *Ring* to invalidate Florida's capital-sentencing scheme in *Hurst v. Florida*, 577 U.S. ---, 136 S.Ct. 616, 193 L.Ed.2d 504 (2016)." *Belton*, 149 Ohio St. 3d at 176. The Ohio Supreme Court explained:

> The Florida law at issue in *Hurst* limited the jury's role in capital sentencing to making an advisory recommendation; a trial court was then free to impose a death sentence even if the jury recommended against it. *Id*. at 620. And even when a jury did recommend a death sentence, a trial court was not permitted to follow that

recommendation until the *judge* found the existence of an aggravating circumstance. *Id.* at 620, 622. Thus, "Florida [did] not require the jury to make the critical findings necessary to impose the death penalty." *Id.* at 622. Instead, the trial judge in *Hurst* "increased [the defendant's] authorized punishment based on her own factfinding" when she sentenced him to death. *Id.* The Supreme Court held that Florida's capital-sentencing law, like the Arizona law in *Ring*, violated the Sixth Amendment. *Id.*

> Ohio's capital-sentencing scheme is unlike the laws at issue in *Ring* and *Hurst*. In Ohio, a capital case does not proceed to the sentencing phase until *after* the fact-finder has found a defendant guilty of one or more aggravating circumstances. *See* R.C. 2929.03(D); R.C. 2929.04(B) and (C); *State v. Thompson*, 141 Ohio St.3d 254, 2014-Ohio-4751, 23 N.E.3d 1096, ¶ 147. Because the determination of guilt of an aggravating circumstance renders the defendant eligible for a capital sentence, it is not possible to make a factual finding during the sentencing phase that will expose a defendant to greater punishment. Moreover, in Ohio, if a defendant is tried by a jury, then the judge cannot impose a sentence of death unless the jury has entered a unanimous verdict for a death sentence. R.C. 2929.03(D)(2).

*Belton*, 149 Ohio St. 3d at 176. The Ohio Supreme Court thus concluded "that when a capital defendant in Ohio elects to waive his or her right to have a jury determine guilt, the Sixth Amendment does not guarantee the defendant a jury at the sentencing phase of trial." *Id.*

Two years later, the Ohio Supreme Court revisited the impact of *Hurst* on Ohio's capital sentencing, albeit more directly, in *State v. Mason*. Mason returned to the state courts after the Sixth Circuit granted conditional habeas corpus relief on his claim of ineffective assistance. *Mason*, 153 Ohio St. 3d at 477. Mason moved the trial court to dismiss his death penalty specifications on

the basis of *Hurst*. The trial court granted Mason's motion, and the state appealed. After the intermediate appellate court reversed, the Ohio Supreme Court accepted review and affirmed the determination by the appellate court that Ohio's death-penalty scheme does not violate the right to a trial by jury. Mason had argued that *Belton* was not controlling "because the *Hurst* question was not squarely presented in that case." *Id*. at 481.

The Supreme Court held that Ohio's death-sentence scheme satisfies an accused's Sixth Amendment right to a jury determination of any fact that makes the accused eligible for the death penalty. The Ohio Supreme Court explained:

> When an Ohio capital defendant elects to be tried by a jury, the jury decides whether the offender is guilty beyond a reasonable doubt of aggravated murder and—unlike the juries in *Ring* and *Hurst*—the aggravating-circumstance specifications for which the offender was indicted. R.C. 2929.03(B). Then the jury—again unlike in *Ring* and *Hurst*—must "unanimously find[ ], by proof beyond a reasonable doubt, that the aggravating circumstances the offender was found guilty of committing outweigh the mitigating factors." R.C. 2929.03(D)(2). An Ohio jury recommends a death sentence only after it makes this finding. *Id*. And without that recommendation by the jury, the trial court may not impose the death sentence.

*Mason*, 153 Ohio St. 3d at 481-82.

In his motion, Petitioner argues that "Ohio courts have long recognized that Ohio's scheme is 'remarkably similar' to Florida's[,]" and that "[b]ecause the trial judge here ultimately made the finding of the existence of mitigating factors and that those mitigating factors were outweighed by the statutory aggravating circumstances *independently* and without any guidance from the jury, the

sentence of death imposed on Dunlap violates the Sixth Amendment under *Hurst*." ECF No. 146, at PageID 8138-39 (quoting *State v. Rogers*, 504 N.E.2d 52, 55 (Ohio 1986)) (emphasis in original). In his reply, however, Petitioner concedes somewhat that since making the arguments he made in his motion, the Ohio Supreme Court's new decision of *State v. Mason* undermines those arguments. ECF No. 153, at PageID 8254. Petitioner nonetheless maintains that his *Hurst* claim is not "'meritless on its face' as the Warden asserts." *Id*. at PageID 8255. Petitioner points to the fact that *Mason* is expected to be appealed to the United States Supreme Court, and that federal courts have a history of rejecting attempts by States to oppose claims attacking capital procedures. Petitioner adds that it is reasonable to allow amendment now, since additional amendment is also sought, and that should the claim lose merit as the proceedings progress, the claim can be dismissed at that time. *Id*. at PageID 8256.

The Court does not agree. The Ohio Supreme Court's holdings in *Mason* and *Belton* are entirely consistent with, and thus bolster by persuasion, the conclusions uniformly reached by judges within this Court and District rejecting attempts by habeas petitioners either to file second-in-time petitions, or to amend pending petitions, to raise a *Hurst*-based challenge to Ohio's capital-sentencing scheme. As the Honorable Walter Rice observed in *Gapen v. Bobby*:

The *Belton* decision underscores the critical difference between the

capital sentencing schemes of Florida and Ohio. Florida's is unconstitutional because it allows the *judge* to make the decision that renders the defendant death-eligible. Ohio's is constitutional because it requires the *jury* to make the decision that renders the defendant death-eligible. An Ohio trial judge cannot *elevate* a defendant's sentence to death based on his or her own fact-finding or make a defendant eligible for the death sentence *independent* of a jury's verdict.

*Gapen*, 2017 WL 3524688, at *4 (emphasis in original). Ohio's capital sentencing scheme does not suffer from the same constitutional infirmities from which Florida's did, and none of Petitioner's arguments persuade this Court otherwise.

Beyond the foregoing, it bears adding that *Hurst* does not appear to apply retroactively to cases on collateral review. After lower courts had spent months opining that *Hurst* did not apply retroactively to cases on collateral review, the Sixth Circuit definitely held as much in *In re Coley*. In *Coley*, Coley had asked the Sixth Circuit either to remand his case to the district court, or to grant him permission to file a second or successive petition, so that he could pursue a claim arguing that *Hurst* invalidates Ohio's capital sentencing scheme. The Sixth Circuit declined Coley's requests, explaining:

[E]ven if we assume that *Hurst* announced "a new rule of constitutional law," the Supreme Court has not "made [*Hurst*] retroactive to cases on collateral review. *See Tyler v. Cain*, 533 U.S. 656, 662-63, 121 S.Ct. 2478, 150 L.Ed.2d 632 (2001). Whether or not *Hurst* says what Coley thinks it says, we cannot authorize his petition. *See* U.S.C. § 2244(b)(3)(C).

*Coley*, 871 F.3d at 457.

Petitioner argues that retroactive application of *Hurst* is not precluded because, under *Teague v. Lane*, 489 U.S. 288 (1989)[1], courts must give retroactive effect to new watershed rules of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceedings, such as *Hurst*. ECF No. 153, at PageID 8255-56 (punctuation marks and citation omitted). In so arguing, Petitioner concedes that he is unaware of any federal authority applying *Hurst* retroactively, and acknowledges that courts within this District have rules that *Hurst* does not apply retroactively. ECF No. 153, at PageID 8256.

*In re Coley* is dispositive, notwithstanding the *Teague* argument that Petitioner makes. Further, this Court is of the view that *Hurst* did not announce a new constitutional rule or watershed rule of criminal procedure, but rather, simply applied *Apprendi* and *Ring*. *See, e.g., Sheppard v. Jenkins*, Case No. 1:12-cv-198, 2018 WL 442327, at *6 (S.D. Ohio Jan. 17, 2018) ("Applying the *Teague* retroactivity analysis to this case, the Magistrate Judge concludes that *Hurst* is not to be applied retroactively to cases, such as this, on collateral review. *Hurst* did not adopt a new substantive constitutional rule and the procedural change it mandates is not a 'watershed' change."); *Gapen v. Robinson*, Case No. 3:08-cv-280, 2017 WL 3524688, at *5 (S.D. Ohio Aug. 15, 2017) ("The undersigned

[1] In *Teague*, the Supreme Court held that new constitutional rules of criminal procedure will not be applicable to cases on collateral review unless the rule in question falls into one of two exceptions: (1) that it places certain kinds of individual conduct beyond the power of the government to proscribe; or (2) that it constitutes a "watershed rule[] of criminal procedure" implicating the fundamental fairness of the trial. *Teague*, 489 U.S. at 310-12.

agrees with Respondent that *Hurst* does not announce a new rule of criminal procedure. It simply applied the principles established in *Apprendi* and *Ring*."); *Sneed v. Jenkins*, Case No. 5:17CV83, 2017 WL 564821, at \*4 (N.D. Ohio Feb. 13, 2017) ("The Supreme Court in *Hurst* plainly and expressly *applied* the standard it first set forth in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and later applied to capital case in *Ring v. Arizona*, 536 U.S. 584 (2002), the Florida's capital-sentencing scheme; it neither expanded the *Apprendi/Ring* rule nor announced a new rule."). *But see McKnight v. Bobby*, Case No. 2:09-cv-059, 2017 WL 631411, at \*4 (S.D. Ohio Feb. 15, 2017) ("The rule announced in *Hurst* is plainly new within the meaning of *Teague*. It was not dictated by precedent."), *supplemented*, 2017 WL 1154119, at \*5 (S.D. Ohio Mar. 28, 2017) ("The Magistrate Judge remains persuaded that [the District Court] should decide the retroactivity question in the first instance, but should decide it against McKnight because *Hurst* is neither a new substantive rule or a new watershed rule of constitutional procedure.").

In view of the foregoing, the Court concludes that Petitioner's proposed *Hurst* claim is plainly without merit. That being so, amendment would be futile. Petitioner's Motion to Amend as it relates to his *Hurst*-based claim, ECF No. 146, is accordingly **DENIED**.

## B. Evidence-Based Amendment

Petitioner also seeks leave to amend his fourteenth ground for relief,

where he alleges that trial counsel were ineffective for failing to investigate and present mitigating evidence. Specifically, Petitioner seeks to replace the eight-page claim pleaded in his initial Petition, Doc. # 3,[2] at pp. 47-54, with a new forty-page claim that is significantly expanded due to the addition of a host of evidence uncovered and developed during these federal habeas proceedings.

The initial Petition commencing these proceedings was filed on July 21, 1999, Doc. # 3, after which a significant period of motion practice ensued. On September 24, 2002 and March 14, 2003, the Court issued orders allowing certain discovery, Doc. #'s 48 and 56, which resulted in the filing of the depositions of trial attorneys Dale Schmidt and William Whalen, as well as Dr. David Chiapone, M.D. On June 12, 2003, Petitioner also filed the affidavit of mitigation investigator James F. Crates. On March 16, 2009, Petitioner filed a motion to further expand the record with affidavits of the following: (1) Mark D. Cunningham, PhD.; (2) Jennifer Robinett; (3) Craig Beaver, PhD. (part 1); (4) Craig Beaver, PhD. (part 2); (5) Eljorn Don Nelson, Pharm.D.; (6) Dr. James Merikangas, M.D.; (7) Byron Adkins; (8) Mark Baize; (9) Dr. Tony Bennett; (10) Anthony Combs; (11) Roger Cooper; (12) Tracy Cowns; (13) Jennifer Day; (14) Eileen Day; (15) Charles C. Drescher; (16) Mark Duffy; (17) Douglas England; (18) John Frost; (19) Gary Hublar; (20) Paul Lockard; (21) David Pinion; (22) Roy

---

[2] The Court utilizes the citation "Doc. #" for documents that preceded the implementation of the Court's electronic filing system and exist in hard copy only. The Court utilizes the citation "ECF No." for documents that are filed on the Court's electronic filing system.

Prince; (23) Joyce Banet; (24) Jeff Topping (some pages missing); (25) Leland Watson; (26) Dr. Ami Klin, PhD.; (27) Dr. Kenneth Khatain (part 1); (28) Dr. Kenneth Khatain (part 2); (29) Dr. Chad Sombke; (30) Royce Creswell; (31) Kristy Becker (part 1); (32) Kristy Becker (part 2); (33) Kristy Becker (part 3); and (34) Roderick W. Pettis, M.D. ECF No. 93. This Court on March 23, 2010 issued an Order granting that motion in full. ECF No. 101.

Pursuant to 28 U.S.C. § 2254(d), a federal court *shall not* issue a writ of habeas corpus on a claim that the state courts adjudicated on the merits unless the state court adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2). A federal court's review of a claim that the state courts adjudicated on the merits is further restricted by the decision of *Cullen v. Pinholster*, 563 U.S. 170 (2011). There, the Supreme Court held "that review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Id*. at 181.

On January 3, 2012, Petitioner filed a motion to stay these habeas proceedings and hold them in abeyance to permit him to return to state court to exhaust the new evidence developed during these proceedings. ECF No. 103.

Petitioner recognized that *Pinholster* precluded this Court from considering the host of new evidence that he added to the record in making the § 2254(d) threshold determination as to the reasonableness of the state courts' decision rejecting Petitioner's claim. *Id.* at PageID 1033, 1040. Petitioner noted that district courts have authority pursuant to *Rhines v. Weber*, 544 U.S. 269, 277 (2005) to order stay-and-abeyance under such circumstances, and that all Petitioner needs to show to warrant such a stay is (1) good cause for his failure to develop his new issues in the state court and (2) that the new issues he wishes to present are not plainly meritless. *Id.* at PageID 1040.

On February 14, 2012, this Court issued an opinion and order granting Petitioner's motion for stay-and-abeyance. The Court explained:

> The Court is persuaded that abeyance is warranted in this case to allow Petitioner to exhaust his new claims in the state courts. They are properly characterized as new claims because they are not the same claims that the state courts already considered. The Court finds that the new evidence that Petitioner added to the record before this Court so fundamentally alters the claims at issue that the principles of comity and federalism underlying the exhaustion doctrine dictate that Petitioner give the state courts an opportunity to address the claims first.

ECF No. 106, at PageID 1072-73 (citations omitted). The Court further found that the claims Petitioner sought to present were not plainly meritless. *Id.* at PageID 1075.

Having completed his state successor postconviction proceedings, Petitioner now seeks to amend his fourteenth ground for relief to add the claims

and evidence that he attempted to present to the state courts. Respondent argues that Petitioner's request should be denied because the Sixth Circuit has now definitively held that stay-and-abeyance is not permitted merely to exhaust "evidence" as opposed to a claim. ECF No. 148, at PageID 8227-28 (discussing *Carter v. Mitchell*, 829 F.3d 455 (6th Cir. 2016)). Petitioner insists that *Carter* does not apply to the issue of what federal courts should do after stay-and-abeyance has been granted and a petitioner seeks to amend, and that because this Court properly determined that a stay was warranted, Petitioner should be permitted to amend ground fourteen. Petitioner's arguments, however persuasive, cannot support the relief he seeks--namely, leave to amend ground fourteen to add evidence developed in these federal proceedings but never considered by the state courts.

In *Carter v. Mitchell*, 829 F.3d at 464-67, the Sixth Circuit held that the trial court had not abused its discretion in denying Carter's request to stay his habeas proceedings and hold them in abeyance so he could return to the state court to present evidence in support of claims that had already been presented to and rejected by the state courts--albeit without the evidence that Carter had developed in habeas corpus. The Sixth Circuit noted that "*Pinholster* indeed limited the 'record under review' in federal habeas proceedings to 'the record before the state court,' precluding review of evidence developed in federal habeas proceedings." *Id*. at 465. "[I]n an effort to evade *Pinholster*," the Sixth

Circuit continued, "Carter seeks to return to state court so that he can change the record before it and, hopefully, recommence federal habeas proceedings with a more favorable state court record." *Id.* The crux of Carter's argument was that "*Rhines* permits stays for a petitioner to 'exhaust evidence' -- in other words, to return to state court to submit additional evidence to buttress claims already exhausted. . . ." *Id.* at 466. The Sixth Circuit rejected that argument, and made clear that *Rhines* stays may not be extended to encompass "unexhausted evidence." *Id.* at 467.

Petitioner may be correct that *Carter* does not somehow retroactively invalidate his return to the state court or the justifications this Court found at the time for granting him a stay. ECF No. 153, at PageID 8250. But the Court would be remiss if it did not acknowledge that had *Carter* been in effect at the time Petitioner requested stay-and-abeyance, *Carter* would have compelled this Court to deny that request. As such, *Carter* may not apply to the issue of whether stay-and-abeyance was warranted, but it is unmistakably informative as to how this Court should proceed going forward, particularly with respect to Petitioner's motion to amend his Petition to add issues that were presented to, but not considered by, the state courts.

The Sixth Circuit has made clear that as to any claim the state courts adjudicated on the merits, federal courts may not consider new evidence developed in habeas proceedings to determine whether the state courts'

adjudication was unreasonable within the meaning of 28 U.S.C. § 2254(d). That is so even when the new evidence was developed or discovered through the mechanism of habeas corpus discovery. *See, e.g., Loza v. Mitchell*, 766 F.3d 466, 494 (6th Cir. 2014); *Moore v. Mitchell*, 708 F.3d 760, 780-84 (6th Cir. 2013). District courts within the Sixth Circuit have even denied requests to conduct discovery on the basis of *Pinholster*. *See Group v. Robinson*, 132 F. Supp. 3d 954, 959-60 (N.D. Ohio 2015); *Davis v. Bobby*, Case No. 2:10-cv-107, 2017 WL 2544083 (S.D. Ohio Jun. 13, 2017); *Skatzes v. Warden, Mansfield Corr. Inst.*, Case No. 3:09-cv-289, 2017 WL 2374434, at \*5 (S.D. Ohio Jun. 1, 2017); *Johnson v. White*, Civil Action No. 7:14-117-KKC, 2017 WL 1086769, at \*4-5 (E.D. Kentucky Mar. 20, 2017).

There is no way to avoid that Petitioner is asking to amend his fourteenth ground for relief not to add new claims but only to add new evidence. Petitioner emphasizes that in its decision granting him a stay, this Court concluded that grounds four and fourteen "'are properly characterized as new claims because they are not the same claims that the state courts already considered.'" ECF No. 153, at PageID 8250 (quoting ECF No. 106, at PageID 1072). Notwithstanding the Court's language, which no doubt was informed by the volume and significance of the evidence that Petitioner developed during habeas corpus discovery, the fact remains that, save for a new allegation that defense counsel's decision not to present mental health evidence was based on a

misunderstanding of Ohio's statutory factors and mitigating circumstances, ECF No. 146-2, at PageID 8178-79, the only thing "new" about Petitioner's proposed ground fourteen compared to ground fourteen as pleaded is the evidence that Petitioner developed in these proceedings.

Petitioner argued in his original ground fourteen that his defense attorneys failed to conduct a reasonable mitigation investigation by failing to retain a mitigation specialist, a defense psychologist, and other mental health experts such as a neuropsychologist, a neuropsychiatrist, and a neurologist despite evidence from Petitioner's past that would have alerted reasonable counsel that such experts were warranted. Doc. # 3, at pp. 47-54. He also set forth what information those experts could have presented during the mitigation hearing. *Id*. In his proposed ground fourteen, Petitioner similarly argues that his defense attorneys failed to conduct a reasonable mitigation investigation by delaying in seeking investigative aid and other defense resources that resulted in no retention of a mitigation specialist and other mental health experts, despite numerous "red flags" from Petitioner's past and despite having all but conceded Petitioner's factual guilt during the culpability phase. ECF No. 146-2, at PageID 8153-60. Petitioner then presents in far more expansive detail than in his original ground fourteen witness testimony and other information that could have been, but were not, presented during mitigation, and correspondingly how Petitioner was prejudiced by defense counsel's deficient performance. *Id*. at PageID 8160-

92.    Petitioner offers no new instances, acts, or claims of mitigation-phase ineffectiveness.   Instead, he offers a plethora of additional facts and evidence gleaned during habeas corpus discovery in support of essentially the same instances, acts, and claims of mitigation-phase ineffectiveness alleged in ground fourteen as originally pleaded.

The evidence Petitioner seeks to add to ground fourteen is evidence that the state courts have not considered, despite Petitioner's attempt to persuade them to consider it.   As to each of the claims that Petitioner presented in his successive postconviction petition, both the trial court and the court of appeals held that the trial court did not have jurisdiction to consider the claim because Petitioner had failed to meet the jurisdictional prerequisites for filing a successive postconviction petition set forth in Ohio Rev. Code § 2953,23(A).   ECF No. 133-4, at PageID 6238, 6240, 6241, 6243; ECF No. 133-4, at PageID 6276.   The Ohio Supreme Court declined jurisdiction to review the case, thereby leaving in effect the trial court's judgment as affirmed by the court of appeals.   ECF No. 133-4, at PageID 6320.   It is immaterial that the trial court and appellate court offered pronouncements on the merits of some of Petitioner's claims, for any judgment of the merits by a court that lacks jurisdiction is *void ab initio.   See, e.g., Gumm v. Mitchell*, 775 F.3d 345, 362 (6th Cir. 2014).   And the Sixth Circuit has ruled that R.C. § 2953.23(A)'s jurisdictional prerequisites constitute an adequate basis for denying federal habeas review.   *See Moore v. Mitchell*, 708

F.3d 760, 776 (6th Cir. 2013); *see also Stojetz v. Ishee*, 892 F.3d 175, 204-06 (6th Cir. 2018); *Davie v. Mitchell*, 547 F.3d 297, 311 (6th Cir. 2008).

The unmistakable conclusion from the foregoing is that the state courts were presented with, but did not consider and therefore *did not have before them*, the new evidence that Petitioner seeks to add to his fourteenth ground for relief. That being so, *Pinholster* precludes this Court from considering that evidence in determining whether the state courts' decision denying the version of Petitioner's mitigation-phase ineffective assistance claim as originally pleaded was unreasonable within the meaning of 28 U.S.C. § 2254(d).

Petitioner argues that because this Court's decision to grant him a stay was sound under *Rhines*, this Court should thus grant Petitioner leave to amend the ineffective assistance claim set forth in ground fourteen. ECF No. 153, at PageID 8252-54. Petitioner is conflating two separate issues. It is accordingly important to clarify what this Court's stay-and-abeyance did and what it did not. In finding that stay-and-abeyance was warranted, this Court concluded that Petitioner had good cause for not presenting his new issues earlier; he still does. This Court also concluded that Petitioner's new issues were not plainly without merit; they still are not. The Court's conclusion that Petitioner's new issues were new *claims* was, in hindsight and through the prism of *Carter v. Mitchell*, an overreach. That is especially so when, as the Court has already determined from a comparison of ground fourteen as originally pleaded and ground fourteen as

proposed that the only thing really "new" about the latter is the evidence developed during these proceedings. *Carter* may not have been in effect when this Court granted a stay, but it is in effect now and this Court is bound by it. Petitioner's scenario is indistinguishable from Carter's. Both pleaded claims already presented to and rejected by the state courts, and then sought to re-present those claims to the state courts bolstered with additional evidence developed through the tools of habeas corpus discovery. The Sixth Circuit found that Carter's request was unwarranted, and had *Carter* been in effect at the time Petitioner sought his stay, this Court would have found the same of Petitioner's request.

Petitioner is essentially gleaning from this Court's stay-and-abeyance order an implicit guarantee that Petitioner would be able to amend his petition with anything that he presented to the state courts during his successor postconviction proceedings. That is an understandable assumption, but one that now runs counter to the current state of the law. Petitioner developed a wealth of new evidence during these proceedings. In the wake of *Pinholster*, allowing Petitioner to return to state court to attempt to present those new issues offered the best chance—but by no means a guarantee—for this Court to be able to consider those new issues. However diligent Petitioner was in that endeavor, he was unsuccessful in having the state courts consider his new issues.

In *Lynch v. Hudson*, 182 F. Supp. 3d 787 (S.D. Ohio 2016), the District

Court addressed a petitioner's attempted but unsuccessful return to the state courts to present new issues/evidence. The District Court explained:

> [P]inholster does not contain a due diligence exception. That is, Petitioner has not cited and the Court is not aware of any language in either *Pinholster* itself or any decision interpreting *Pinholster* suggesting that a petitioner who diligently attempts to convince the state courts to consider new evidence, but ultimately does not succeed, can escape the reach of *Pinholster* to have a federal habeas court consider his new evidence. By contrast, this Court is aware of at least one decision precluding, on the basis of *Pinholster*, consideration of new evidence that state procedural rules prevented the state courts from considering. *See Pellecier v. Palosaari*, No. CV-05-159, 2012 WL 7807606, at *11 (D. Arizona May 3, 2012) ("Because the state court did not consider the evidence presented in the second PCR petition, this Court cannot consider it when evaluating the merits under (d)(1).") *Pinholster* provides for no such exception and this Court will not read one into the decision.

*Lynch*, 182 F. Supp. 3d at 791. This Court agrees.

Allowing Petitioner to amend his ground fourteen solely to add facts and arguments that this Court cannot consider is the very definition of futility. That being so, Petitioner's motion to amend his Fourteenth Ground for Relief to add new evidence and issues developed during discovery in these proceedings is **DENIED**, subject to reconsideration should this Court determine, based solely on the evidence that the state courts had before them when they rejected claim fourteen as originally pleaded in these proceedings, that the state courts' decision was unreasonable within the meaning of § 2254(d).

Although the above result is inescapable, the Court finds it repugnant. From Congress's 1996 enactment of the Antiterrorism and Effective Death

Penalty Act, through *Pinholster* (including the federal courts' expansive interpretation of that decision), habeas corpus petitioners' ability to develop facts supporting alleged constitutional violations has been reduced to non-existence. When combined with Ohio courts' consistent failure to allow factual development during state postconviction proceedings, habeas petitioners are left with no meaningful remedy to expose constitutional violations. The persistent drumbeat of substantive and procedural roadblocks to habeas petitioners' ability to develop facts effectively emasculates the remedy meant to serve as "a bulwark against convictions that violate 'fundamental fairness.'" *See Engle v. Isaac*, 456 U.S. 107, 126 (1982) (quoting *Wainwright v. Sykes*, 433 U.S. 72, 97 (1977)).

The only amendment-based issue that remains for the Court to resolve is whether to allow Petitioner to add to ground fourteen the new allegation that defense counsel provided mitigation-based ineffective assistance because they lacked a basic understanding of Ohio's statutory aggravating factors and mitigating circumstances. ECF No. 146-2, at PageID 8178-79. Petitioner's argument is that even though the statutory aggravating circumstances set forth in Ohio Rev. Code § 2929.04(A) do not include "future dangerousness," and even though the Ohio Supreme Court has made clear that only statutory aggravating circumstances found by the factfinder are to be weighed against mitigating factors, defense counsel's decision to forgo the presentation of mental health evidence was based on (misplaced) fears that such evidence of Petitioner's

"future dangerousness" would have been harmful to the mitigation case.

At first glance, to the extent that this is a new claim not alleged in ground fourteen as originally pleaded, it would appear to be barred by § 2244(d)(1)'s one-year statute of limitations and/or procedurally defaulted. But the parties did not address those considerations sufficient for the Court to resolve the issue. The Court will accordingly allow the addition to ground fourteen of the allegation that trial counsel were ineffective for lacking a basic understanding of Ohio's statutory aggravating factors and mitigating circumstances, and direct the parties to address in future briefing the procedural issues identified above.

## III. MOTION TO STAY PROCEEDINGS AND HOLD THEM IN ABEYANCE

Before a federal habeas court may grant relief, a state prisoner must exhaust his available remedies in the state courts. *Castille v. Peoples*, 489 U.S. 346, 349 (1989); *Silverburg v. Evitts*, 993 F.2d 124, 126 (6th Cir. 1993). District courts have the authority to grant stays in habeas corpus cases in order to permit exhaustion of state-court remedies in consideration of the AEDPA's preference that state courts have the first opportunity to resolve claims challenging the constitutionality of a state-court judgment. In recognizing district courts' authority in this regard, however, the Supreme Court cautioned:

> [S]tay and abeyance should be available only in limited circumstances. Because granting a stay effectively excuses a petitioner's failure to present his claims first to the state courts, stay and abeyance is only appropriate when the district court determines there was good cause for the petitioner's failure to exhaust his

claims first in state court. Moreover, even if a petitioner had good cause for that failure, the district court would abuse its discretion if it were to grant him a stay when his unexhausted claims are plainly meritless. *Cf.* 28 U.S.C. § 2254)(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State")....

On the other hand, it likely would be an abuse of discretion for a district court to deny a stay and to dismiss a mixed petition if the petitioner had good cause for his failure to exhaust, his unexhausted claims are potentially meritorious, and there is no indication that the petitioner engaged in intentionally dilatory litigation tactics.

*Rhines v. Weber*, 544 U.S. 269, 277-78 (2005). Thus, a court deciding whether stay-and-abeyance is warranted must weigh (1) whether there is good cause for the petitioner's failure to have exhausted his state remedies; (2) whether the petitioner's unexhausted claim is plainly meritless; and (3) whether the petitioner has engaged in intentionally dilatory tactics.

A federal habeas court's authority to stay proceedings pending exhaustion of unexhausted claims, however, exists only when the Court is presented with a mixed petition. *Rhines*, 544 U.S. at 276; *see also Jackson v. Roe*, 425 F.3d 654, 659-61 (9th Cir. 2005). As noted above, this Court has denied Petitioner's request to add his unexhausted *Hurst* claim. The Petition before the Court is thus fully exhausted. When the Petition before the Court contains only exhausted claims, it is premature to determine whether a stay would be warranted under *Rhines* as to an unexhausted claim that is not included in the petition. *Allen v. Moore*, No. 1:05cv731, 2007 WL 651248, at *4 (S.D. Ohio Feb. 23, 2007); *see*

also *Hall v. Conway*, No. 04-CV-6011L, 2008 WL 2559371, at *1-2 (W.D.N.Y. Jun. 23, 2008); *Franck v. Hubbard*, No. 07cv846, 2008 WL 755925, at *13 (S.D. Cal. Mar. 18, 2008); *Rodriguez v. Walsh*, No. 03 Civ. 0470, 2006 WL 1676897, at *1 (S.D.N.Y. Jun. 19, 2006). Because the Court has denied amendment, and because the issue of whether a stay is warranted under *Rhines* is not ripe for resolution by this Court, this Court need not address the parties' other procedural or substantive arguments concerning Petitioner's proposed *Hurst* claim.

The Court is aware that Petitioner has already initiated state-court proceedings to obtain relief on his *Hurst* claim. ECF No. 155. Although Petitioner should not be deterred by today's decision from continuing to pursue his *Hurst* claim in the state courts, Petitioner likewise should not construe this decision as a guarantee that the Court will await exhaustion of state court remedies prior to considering the merits of the claims and issues presently before this Court, or that the Court will even entertain another motion to add a *Hurst*-based claim absent a dramatic turn in Ohio and/or Federal caselaw that would warrant addition of such a claim. In sum, there is simply no basis for staying these proceedings for exhaustion of a claim that appears, until shown otherwise, to be without merit. That is especially so in view of the fact that this case was already stayed once before--for five years.

Petitioner's Motion to Stay Proceedings, ECF No. 147, is accordingly **DENIED**.

## IV. CONCLUSION

For the foregoing reasons, Petitioner's motions to amend and for stay and abeyance, ECF Nos. 146 and 147, are **DENIED**, subject to the conditions set forth above. The Court **further ORDERS** that the parties show cause, jointly or individually, within thirty (30) days of the date of this order, why the Court should not proceed to prepare a final judgment on the merits of the claims properly before the Court on the basis of the pleadings previously filed, to wit: the Petition (Doc. #3), the Court's Opinion and Order addressing procedural default (ECF No. 41); Respondent's Merit Brief (ECF No. 66); and Petitioner's Merit Brief (ECF No. 68). Should the parties agree to the Court proceeding on the basis of the pleadings previously filed, the parties should file a joint notice so indicating, upon which the Court will issue a scheduling order for the parties to address any procedural defenses against the new claim added to ground fourteen, to wit: that trial counsel were ineffective for lacking a basic understanding of Ohio's aggravating factors and mitigating circumstances.

IT IS SO ORDERED.

MICHAEL H. WATSON, JUDGE
UNITED STATES DISTRICT COURT