# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

**TIMOTHY DUNLAP,**

        **Petitioner,**

**v.**

**DAVID PASKETT, Warden,**

        **Respondent.**

**Case No.  1:99-cv-559**
**JUDGE MICHAEL H. WATSON**
**Magistrate Judge Elizabeth P. Deavers**

## OPINION AND ORDER

The Court entered final judgment dismissing this capital habeas corpus action on September 27, 2021.  ECF Nos. 185, 186.  Petitioner now moves to alter or amend judgment, ECF No. 187, and to supplement that motion, ECF No. 190.  For the reasons that follow, Petitioner's motion to supplement is granted, but his motion to alter or amend is denied.

## I. OVERVIEW

Petitioner seeks reconsideration of the Court's decision denying his mitigation-phase claims of ineffective assistance of trial counsel, specifically claims four and fourteen alleging counsel's unreasonable and prejudicial failure to conduct a more thorough investigation into, and present evidence of, Petitioner's history of serious mental health disorder(s).  Petitioner asserts that reconsideration is necessary to remedy several clear errors of law, mistakes of fact, and oversights that the Court made in reaching its decision.  ECF No. 187,

at PAGEID # 9720. But Petitioner has failed to demonstrate any such errors, mistakes, or oversights.

## II. STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 59(e), a petitioner may move to alter or amend a judgment within twenty-eight days of the district court's entry of the judgment. It "is a one-time effort to bring alleged errors in a just-issued decision to a habeas court's attention, before taking a single appeal." *Banister v. Davis*, 140 S. Ct. 1698, 1710 (2020). A Rule 59(e) motion is proper only if there is (1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice. *Clark v. United States*, 764 F.3d 653, 661 (6th Cir. 2014) (citing *Leisure Caviar v. U.S. Fish & Wildlife Serv.*, 616 F.3d 612, 615 (6th Cir. 2010)). The Supreme Court recently reiterated that "a prisoner may invoke the rule only to request 'reconsideration of matters properly encompassed' in the challenged judgment . . . . Courts will not entertain arguments that could have been but were not raised before the just-issued decision." *Banister*, 140 S. Ct. at 1708 (quoting *White v. New Hampshire Dep't of Emp. Sec.*, 455 U.S. 445, 451 (1982)). Further, Rule 59(e) is "not meant to allow a disappointed litigant to attempt to persuade the Court to change its mind." *Lonardo v. Travelers Indem. Co.*, 706 F. Supp. 2d 766, 809 (N.D. Ohio 2010) (citing *GenCorp., Inc. v. Am. Int'l Underwriters*, 178

F.3d 804, 834 (6th Cir. 1999)).

### III. DISCUSSION

Petitioner asks the Court to reconsider its decision "that counsel's penalty-phase investigation and mitigation case were reasonable and thus constitutionally sufficient."  ECF No. 185, at PAGEID # 9630.  Specifically, Petitioner attacks the Court's conclusion that:

> [T]rial counsel's decision not to pursue further mental health evaluations or evidence was the result of a reasonable strategic decision supported by sufficient investigation, not the result of an oversight [lapse] borne of an unreasonable failure to pursue "red flags" that no reasonably competent attorney would close the door on *or* a mistaken belief that Petitioner's future dangerousness could be weighed by the jury as a non-statutory aggravating circumstance in favor of a death sentence.

ECF No. 185, at PAGEID # 9648.  Although this "deficient performance" determination was foremost to—and dispositive of—Petitioner's ineffective assistance claim, Petitioner also alleges "significant legal and factual errors" exist in the Court's determination that Petitioner was not prejudiced by counsel's allegedly deficient performance.  Petitioner focuses first on the prejudice analysis, and the Court will do the same.

## A. Prejudice

### 1.  "Nexus" Argument

Petitioner first argues that the Court denied his penalty-phase ineffective assistance claim "on the basis that he failed to show 'any nexus between' his

mitigation offered and his 'behavior in connection' with the murder of Belinda Bolanos," and that such a denial "is inconsistent with long settled Supreme Court precedent." ECF No. 187, at PAGEID # 9724. Petitioner also accuses the Court of "discounting" evidence of "serious mental health issues" because the evidence "was not sufficiently related [to] the offenses." *Id.* at PAGEID # 9725. These arguments are insufficient to warrant altering or amending the judgment.

First, the Court did not deny Petitioner's claim (or fail to find prejudice) due to a missing nexus between the mental health evidence (presented and/or available) and Petitioner's conduct. Rather, the Court concluded that consistency between various experts' opinions as to the tentativeness of a nexus between Petitioner's possible disorders and his behavior was *just one* of several reasons why the mental health evidence, however relevant, may not have been as compelling as Petitioner urges. ECF No. 185, at PAGEID ## 9645–48. The other reasons included the consistency in various experts' opinions regarding Petitioner's propensity for malingering, aggrandizing, lying, manipulating, and exhibiting predatory or sexually abusive behavior. Further, the Court's discussion of a nexus between Petitioner's alleged mental disorders and his conduct stemmed from language used by the Sixth Circuit in a decision which dismissed the import of three postconviction mental evaluations with tentative diagnoses and a tenuous connection between the possible mental disorders and

the petitioner's commission of the crimes. ECF No. 185, at PAGEID # 9645

(citing *Carter v. Mitchell*, 443 F.3d 517, 527–30 (6th Cir. 2006)).

Second, the Court did not, as Petitioner asserts, ECF No. 187 at PAGEID

## 9726, 9730, "disregard" or "minimize" the mental health evidence or its

relevance due to a missing nexus between the mental disorders established or

suggested by that evidence and Petitioner's conduct in committing the offenses.

Rather, the Court considered the evidence (presented and/or available) at length.

ECF No. 185, at PAGEID ## 9634–36, 9639–45, 9645–47, 9657–59.

The prejudice prong of *Strickland*'s two-prong standard defining

constitutionally ineffective assistance of counsel requires proof that, but for

counsel's deficient performance, there is a reasonable probability that the result

would have been different.[1] Thus, Petitioner would have to show in this case

that, but for counsel's failure to investigate and present a more complete picture

of Petitioner's mental health problems, there would have been a reasonable

probability that the penalty phase would have resulted in a sentence other than

death. That determination thus requires a court to look beyond the *relevance* of

the omitted mitigating evidence and additionally consider its *substance*. The

Court did that and found that unfavorable opinions and observations were

---

[1] *Strickland v. Washington*, 466 U.S. 668, 695 (1984) ("When a defendant challenges a death sentence such as the one at issue in this case, the question is whether there is a reasonable probability that, absent the errors, the sentencer—including an appellate

consistently expressed by numerous mental health providers.  Whether, or to what extent, various experts expressed skepticism about the nexus between Petitioner's suspected mental disorders and his conduct was one of several factors germane to the Court's examination.  Petitioner proceeds to use misconceptions about the Court's "nexus" reference to re-argue the *same* evidence, ECF No. 187, at PAGEID ## 9726–30, in search of a *different* result. That is not a proper basis to alter or amend judgment.

Finally, in urging the Court to revisit the "prejudice" prong of *Strickland*, Petitioner discounts that it was the Court's "deficient performance" analysis that was foremost and dispositive of his claim.  For all these reasons, Petitioner's "nexus" argument does not warrant alteration or amendment of the Court's decision.

## 2.  Argument about Relying on Idaho Resentencing

Petitioner next argues that the Court erred when it relied on Petitioner's 2006 Idaho resentencing in assessing prejudice under *Strickland*.  ECF No. 187, at PAGEID # 9731.  Petitioner is referring to a single sentence in which the Court stated: "It is telling—but by no means binding and perhaps not even compelling, given the different aggravating circumstances and mitigating factors at issue— that even with the benefit of all of the new mitigation evidence that was presented

court, to the extent it independently reweighs the evidence—would have concluded that

during Petitioner's 2006 Idaho resentencing hearing, the jury still sentenced Petitioner to death." ECF No. 185, at PAGEID # 9659 (citing *Dunlap v. State*, 159 Idaho 280, 291, 360 P.3d 289, 300 (2015)). Petitioner argues that "the correct starting point is the Idaho Supreme Court's opinion from 2013[,]" which found a genuine issue of material fact as to the deficient performance of Petitioner's Idaho trial counsel and noted significant evidence of prejudice. ECF No. 187, at PAGE ## 9731–32 (discussing *State v. Dunlap*, 155 Idaho 345, 388, 313 P.3d 1, 44 (2013)). Petitioner further argues that "the most compelling mitigation before this Court" was never presented during either the 2006 Idaho resentencing or Petitioner's Ohio penalty phase. ECF No. 187, at PAGEID # 9733. These arguments fall short of the standard for altering or amending judgment.

First, it is evident from a reading of the Court's entire prejudice analysis, ECF No. 185, at PAGEID ## 9657–59, that the Court did not attach to the 2006 Idaho resentencing the weight that Petitioner suggests. Second, rather than split hairs post-judgment about whether "the correct starting point" is the 2006 resentencing itself or what transpired on appeals from that resentencing, the Court is comfortable discarding any reference to Petitioner's post-judgment Idaho proceedings. The Court does so for the very reason it originally and explicitly

---

the balance of aggravating and mitigating circumstances did not warrant death.").

qualified any reliance on those proceedings:  because of the different

aggravating circumstances and mitigating factors at issue.  Of course, the Court

_could_ point to the latest resentencing, which ended with a death sentence that is

on appeal.  ECF No. 187, PAGEID # 9732, n.2.  Instead, however, the Court will

agree that Petitioner's post-judgment Idaho proceedings were inapposite given

the different statutory schemes and different aggravating and mitigating

circumstances.  But even without the post-judgment Idaho proceedings, the

Court is not persuaded that Petitioner has demonstrated prejudice under

_Strickland_.  And again, it was the Court's determination that counsel's mitigation-

phase investigation and presentation were constitutionally sufficient that was

foremost and dispositive of Petitioner's claim.  Petitioner's "Idaho resentencing"

argument does not warrant alteration or amendment of the Court's decision.

## B.  Deficient Performance

### 1. Opinion that "Future Dangerousness" Could Be Considered

The Court found that counsel did not render deficient performance in failing

to pursue more mental health evidence for their mitigation case.  Rather, the

Court called it "a reasonable and legitimate strategy" to try to minimize the

quantity of evidence of Petitioner's future dangerousness that was presented to

the jury.  The Court so concluded "_not_ because counsel were under the

misapprehension that the jury would be able to place 'future dangerousness' as

an additional non-statutory aggravating circumstance on the 'death' side of the scale," but because it was damaging evidence in its own right, irrespective of whether it constituted an additional aggravating circumstance on the "death" side of the scale. ECF No. 185, at PAGEID # 9637. Petitioner argues that it was error to find that future dangerousness could be considered in any way in the sentencing process. ECF No. 187, at PAGEID ## 9734–38. The Court disagrees.

First, as the Court noted, the record does *not establish* that trial counsel were under the mistaken impression that "future dangerousness" could be considered as an aggravating circumstance. The record establishes only that, more than ten years after the trial, counsel could not recall and recite what Ohio's statutory aggravating circumstances were at the time of the trial. ECF No. 133-2, at PAGEID # 5658. That is insufficient to establish constitutional ineffectiveness. As this Court explained in *Johnson v. Bobby*, Case No. 2:08-cv-55, 2021 WL 6125049, at *82 (S.D. Ohio Dec. 28, 2021):

> It is not up to counsel to prove their decision was either reasonable or strategic ten years after trial when memories have faded. Petitioner bears the burden of overcoming the deference courts show to counsel's decisions. That counsel may not have remembered the reasons for every decision is hardly surprising and hardly enough, standing alone, to justify a conclusion that counsel's actions were constitutionally ineffective.

It is certainly insufficient to justify alteration or amendment of the judgment, especially when this "misapprehension" allegation was also barred by procedural default and principles of equity.  ECF No. 185, at PAGEID ## 9604–07.

Furthermore, Petitioner argued the Court "should reconsider its opinion that evidence of the unproven non-statutory aggravator of future dangerousness could be presented to, and considered by, the Ohio jury."  ECF No. 187, at PAGEID # 9734.  This argument also fails.  As noted above, the Court clearly said that "future dangerousness" was *not* an aggravating circumstance that could be stacked on the death-side of the scale, ECF No. 185, at PAGE ## 9637–38.  That distinction matters.  In *Stallings v. Bagley*, 561 F. Supp. 2d 821, 848–49 (N.D. Ohio 2008), the district court held:

> [W]hile a capital jury's consideration of a defendant's future dangerousness in its sentencing decision is not unconstitutional *per se*, *Simmons v. South Carolina*, 512 U.S. 154, 162 [] (1994), in Ohio the prosecution is foreclosed from raising the issue of future dangerousness because it is not one of the enumerated aggravating circumstances found in Ohio Revised Code § 2929.04(A), that a jury may consider when sentencing a capital defendant.

Here, the prosecution repeatedly and correctly identified the two statutory aggravating circumstances that Petitioner was charged with and found guilty of. ECF No. 134-1, at PAGEID ## 7624, 7626, 7759–61, 7794.  The prosecution never raised, or urged the jury to consider, Petitioner's future dangerousness as an additional aggravating circumstance.  Additionally, the court properly

instructed the jury as to the only two statutory aggravating circumstances that could be considered, *i.e.*, the statutory aggravating circumstances that were charged in the indictment and found by the jury beyond a reasonable doubt. *Id.* at PAGEID # 7817.[2]

Petitioner's "future dangerousness" argument does not warrant alteration or amendment of the Court's judgment.

## 2. Evidence Counsel Possessed Versus Available Evidence

Petitioner next argues that the Court erred by limiting its consideration to only evidence that trial counsel actually had (or were aware of) as opposed to considering all of the available evidence that a reasonable investigation by counsel would have uncovered. ECF No. 187, at PAGEID ## 9738–40. Relying on *Wiggins v. Smith*, 539 U.S. 510, 524 (2003) (citing ABA Guidelines for the Appointment and Performance of Counsel in Death Penalty Cases 11.4.1(C) (1989)); and *Rompilla v. Beard*, 545 U.S. 373, 387 n.7 (2005), Petitioner argues that mitigation-phase effectiveness imposes a duty to discover all reasonably available evidence. ECF No. 187, at PAGEID ## 9738–39.

---

[2] Moreover, Petitioner offered evidence of, and much argument was made about, his remorse. *Id.* at PAGEID ## 7685, 7686, 7697–7749, 7767–68, 7805–08. And the Court is aware of at least one decision in which a district court suggested that evidence of future dangerousness was properly offered to rebut the accused's evidence of remorse. *Raglin v. Mitchell*, Case No. 1:00-cv-767, 2011 WL 2183287, at *32 (S.D. Ohio Feb. 2, 2011) (Merz, M.J.).

Petitioner's argument misapprehends the entire foundation of the Court's reasoning: counsel's determination that mental health was not an avenue of mitigation worth pursuing further, which determination was based on the evidence counsel had uncovered or learned about leading up to Petitioner's trial, was a reasonable strategic decision based on a sufficient investigation. And contrary to Petitioner's above argument, the Court does not agree that counsel abandoned their investigation after gaining only "rudimentary knowledge." ECF No. 187, at PAGEID # 9739 (quoting *Wiggins*, 539 U.S. at 524). Their investigation was not truncated prematurely but was instead drawn down reasonably. Even if, for argument's sake, there happened to exist additional mental health evidence, the evidence counsel did gather or learn of revealed no glaring leads or red flags that counsel left unpursued, abandoned, or ignored. Rather, counsel obtained or learned of enough evidence from which a reasonable attorney could decide as a matter of strategy that it was not beneficial to further investigate Petitioner's mental health.

Petitioner **uses the following legal principle**: "In assessing the reasonableness of an attorney's investigation," "a court must consider not only the quantum of evidence already known to counsel, but also whether the known evidence would lead a reasonable attorney to investigate further[,]" which quotes *Wiggins*, 539 U.S. at 527, and is a correct statement thereof, **to support the**

Case No. 1:99-cv-559                                                    Page 12 of 22

**following argument**: Reviewing courts are required to consider the evidence that was available at the time of the petitioner's trial in order to determine whether the scope of trial counsel's investigation was reasonable. ECF No. 187, at PAGEID # 9739. This is not a correct statement of law. The Court thus stands by its conclusion that:

> [T]rial counsel acted reasonably in relying on the information that was available to them leading up to Petitioner's trial to decide as a matter of strategy that pursuing additional mental health evidence would not be beneficial. And even if Petitioner discounts the opinions rendered by Dr. Estess, the LifeSpring records, David Doten, and Dr. Chiappone [*i.e.*, the gravamen of the evidence available to trial counsel leading up to Petitioner's trial] as not being fully informed or not accurately rendered by appropriately qualified experts, that is with the benefit of hindsight, not forward-looking from counsel's perspective at the time, as *Strickland* requires.

ECF No. 185, at PAGEID # 9645.

As a sub-argument, Petitioner argues that any reasonable attorney would have obtained records from the institution from which Petitioner had escaped just prior to committing the murder (Madison State Hospital). ECF No. 187, at PAGEID ## 9740–44. Petitioner asserts that the failure to collect these records was "unconscionable" and not "justified by any reasonable trial strategy" for two reasons. First, according to Petitioner, those were the most recent mental health records preceding the crimes for which he was tried and convicted. *Id*. at PAGEID # 9741. Second, Petitioner continues, because the prosecution already possessed the record, counsel had no reason to use the records' reference to

Petitioner's future dangerousness as a reason for failing to obtain the records. To that point, Petitioner reiterates *Rompilla*'s imposition of a duty to make all reasonable efforts to investigate material that counsel knows the prosecution will assert as aggravation at the sentencing phase. *Id.* at PAGEID ## 9742–43 (discussing *Rompilla*, 545 U.S. at 377–79).

In making this sub-argument, Petitioner touts the favorability of the Madison State Hospital records. ECF No. 187, at PAGEID # 9744. But Dr. Michael Estess's February 28, 1992 letter describes the records and contains nothing particularly notable; his description says the records largely mirror what was reflected in the LifeSpring records and what Dr. Estess himself observed. ECF No. 132-10, at PAGEID ## 4136–37; ECF No. 140-1, at PAGEID # 7920. Further, according to defense expert Dr. David Chiappone's summary and habeas corpus deposition, Petitioner admitted that he had engaged in malingering during treatment related to his marital/legal problems in order to delay any legal action. ECF No. 133-3, at PAGEID # 6066. It is reasonable to believe that Dr. Chiappone shared this admission with trial counsel. Thus, counsel's failure to obtain these records, while perhaps not optimal, cannot be characterized as objectively unreasonable.

And Petitioner's continued suggestion that counsel's omissions were driven by a misapprehension about the admissibility of "future dangerousness"

evidence has been addressed and rejected, not only as procedurally defaulted, ECF No. 185, at PAGEID ## 9604–10, 9634, but also as unsupported by the record and insufficient to warrant alteration or amendment of the Court's judgment. Petitioner's potential for future dangerousness and lack of remorse were just two of several unfavorable opinions voiced by the mental health professionals who treated or observed Petitioner and which counsel learned of leading up to trial. In this regard, the Court finds specious Petitioner's argument that, in lieu of obtaining the available source evidence, counsel simply "accepted [Dr. Estess]'s interpretation of those documents as gospel[,]" and relied "on a cursory report from Dr. Chiappone[.]" ECF No. 187, at PAGEID # 9743.

More importantly, this argument—placing emphasis for the first time on counsel's failure to obtain records from the institution from which Petitioner escaped—could have been, but was not, made earlier. Similarly, Petitioner's *Rompilla* argument establishing the unreasonableness of an attorney's failure to examine any material that the prosecution will use at sentencing is also an argument that could have been raised earlier. And here, unlike in *Rompilla*, counsel's decisions stemmed from strategic judgment rather than inattention.

As another sub-argument, Petitioner argues that other available records would have substantially bolstered counsel's ability to undermine the damaging opinions that Dr. Estess offered during the sentencing phase. ECF No. 187, at

PAGEID ## 9744–49.  Contrary to the Court's conclusion that counsel's truncated investigation was justified by the consistently unfavorable opinions expressed in the mental health evidence that trial counsel did investigate, Petitioner contends that "[a]n examination of the records shows clear contradictions trial counsel failed to use to their advantage, and which this Court should assess in reconsidering its decision regarding trial counsel's conduct." *Id.* at PAGEID # 9745.

In attempting to undercut the Court's determination that counsel reasonably decided—on the basis of more than rudimentary evidence—that continued investigation into Petitioner's mental health would not likely produce valuable evidence for their mitigation case, Petitioner downplays consistencies in unfavorable opinions expressed in the mental health evidence known to counsel. He also overstates the few contradictions scattered through the evidence. Petitioner provides as examples records indicating that Petitioner had a developmental age below his chronological age and records demonstrating that Petitioner was not feigning mental disorders.  ECF No. 187, at PAGEID # 9746. These examples are insufficient to undermine the Court's determination, both in its dispositive opinion and already discussed in the instant decision, that opinions expressed by mental health professionals in testimony and records were consistent in several unfavorable respects, ECF No. 185, at PAGEID ## 9638–

39, 9645.  Petitioner's examples certainly do not amount to a "clear error" sufficient to warrant alteration or amendment.

Petitioner also minimizes counsel's investigation as consisting of just "[r]eview[ing] of one set of records and limited interviews with family."  ECF No. 187, at PAGEID # 9745.  But counsel did more than what Petitioner suggests, even if informally.  What Petitioner characterizes as "limited interviews" with his immediate family members stands in stark contrast to what counsel recalled as multiple, substantive conversations with Petitioner's family—especially Petitioner's mother, ECF No. 185, at PAGEID ## 9649, 9650–51.  And the suggestion that counsel's investigation into Petitioner's mental health consisted of "[r]eview[ing] one set of records" ignores counsel's preparation for and participation in the pre-trial deposition of Dr. Estess, ECF No. 185, at PAGEID ## 9649–50, as well as counsel's consultation with their defense psychologist, Dr. Chiappone.  Review of Dr. Estess's deposition transcript and trial transcripts, as well as defense counsel's habeas deposition transcripts, ECF No. 185, at PAGEID ## 9653–54, reveals a level of preparation and knowledge greater than that characterized by Petitioner and also belies Petitioner's argument that counsel went into Dr. Estess's deposition "completely unprepared," ECF No. 187, at PAGEID # 9748.

Petitioner also offers as an example of counsel's unpreparedness their mistaken recollection, some ten years later, that they received the services of mitigation investigator James Crates.  ECF No. 187, at PAGEID # 9747.  They did not, ECF No. 61, at PAGEID # 9200, but the Court addressed this matter in its opinion, ECF No. 185, at PAGE ## 9652–53, and will not revisit it here.

The remainder of this sub-argument consists of Petitioner again using the Court's alleged failure to consider all of the evidence *in existence* when assessing the reasonableness of counsel's decision to forgo additional mental health investigation as justification to re-argue the same evidence set forth in support of his habeas petition in search of a different result.  ECF No. 187, at PAGEID ## 9748–49.  The Court stands by its determination that trial counsel acted reasonably in relying on the information that was known to them leading up to Petitioner's trial to decide as a matter of strategy that pursuing additional mental health evidence would not be beneficial to Petitioner's mitigation case.  ECF No. 185, at PAGEID  # 9645.  The Court will not revisit arguments and evidence already considered and rejected.  Petitioner's "all available evidence" argument does not support alteration or amendment of the Court's judgment.

## C.  Reasonableness of State Court's Decision

Petitioner also urges the Court to alter or amend its determination that the state appellate court's decision affirming the denial of his mitigation-phase

ineffective assistance claims was reasonable within the meaning of 28 U.S.C. § 2254(d). ECF No. 187, at PAGEID ## 9749–51. Petitioner reasons that the state court failed to conduct any of the legal analysis required by *Strickland* and erroneously curtailed its prejudice examination by placing undue reliance on the presumed reasonableness of counsel's investigation and performance. Petitioner's arguments do not warrant amendment or alteration of the Court's judgment.

The Court essentially agreed with the absurdity of finding "reasonableness" in "[t]he appellate court's one-paragraph decision" that "did not discuss or even reference any supporting exhibits" and "did not plausibly convey any serious level of consideration." ECF No. 185, at PAGEID # 9627. But the Court also noted that, despite the fact that the state court's decision "does not appear to meet a dictionary or commonly understood definition of 'reasonable[,]'" ECF No. 185, at PAGEID # 9628, the state court's decision satisfies the Sixth Circuit's definition of "reasonableness," ECF No. 185, at PAGEID ## 9628–29 (discussing *England v. Hart*, 970 F.3d 698, 710 (6th Cir. 2020), and *Cassano v. Shoop*, 1 F.4th 458, 472–73 (6th Cir. 2021))—the definition that is binding on this Court. Moreover, the Court still found Petitioner's claim meritless under *de novo* review. ECF No. 185, at PAGEID # 9630. Petitioner's "§ 2254(d) reasonableness" argument does not warrant alteration or amendment of the Court's decision.

## D. Motion to Supplement

Petitioner seeks permission to supplement the instant motion with a remand order issued by the Sixth Circuit in the capital case of *Kinley v. Bradshaw*, No. 14-4063, as intervening new law.[3]  ECF No. 190.  According to Petitioner:

> *Kinley* confirms that, contrary to this Court's order denying habeas corpus relief (ECF No. 185), which had applied *Cullen v. Pinholster*, 563 U.S. 170 (2011) to bar consideration of mitigating evidence that Dunlap presented to the Ohio courts in his successive state post-conviction petition, this Court must now consider that new evidence supporting his Fourteenth Ground for Relief.

ECF No. 190, at PAGEID # 9777; ECF No. 190-1, at PAGE # 9780.  The Court is not persuaded that the remand order in *Kinley* warrants any alteration or amendment of the judgment in the instant case.

Notwithstanding the many pleadings and decisions that went into the remand order—Case No. 3:03-cv-127, ECF No. 139, (Feb. 18, 2022)—it is an unpublished, unexplained order, signed by the Clerk, and as of the writing of the instant decision, not yet addressed by this Court.  Thus, nothing about that remand order is binding or even persuasive sufficient to "overturn" or "abrogate" this Court's application of *Pinholster*, ECF No. 190-1, at PAGEID # 9787, much less constitutes an "intervening change of law."  *See, e.g., Bell v. Johnson*, 308

---

[3]  Petitioner states that Respondent does not object this motion to supplement.  ECF No. 190, at PAGEID # 9777.

F.3d 594, 611 (6th Cir. 2002) ("It is well-settled law in this circuit that unpublished

cases are not binding precedent." (citing *Salamalekis v. Comm'r of Soc. Sec.*,

221 F.3d 828, 833 (6th Cir. 2000); *Cattin v. Gen. Motors Corp.*, 955 F.2d 416,

431 n. 14 (6th Cir. 1992))); *see also Mattox v. Edelman*, 851 F.3d 583, 594 (6th

Cir. 2017) (finding unpersuasive "on point" language in an "unsigned,

unpublished order with no reasoning").  Absent an "intervening change of law,"

this Court's application of *Pinholster* in the instant case is properly resolved by

the Sixth Circuit on appeal, not by this Court on a motion to alter or amend.  The

Court expressly certified this issue for appeal.  ECF No. 185, at PAGEID

## 9603–04.

Although the motion to supplement and accompanying exhibits do not

support alteration or amendment of the Court's judgment, the Court will grant

Petitioner's motion to supplement, ECF No. 190, out of an abundance of caution

and in the interests of a complete record.[4]

---

[4] It bears noting that although the Court officially found that *Pinholster* precluded
consideration of the new evidence that Petitioner developed during these proceedings
and attempted to present to the state courts in his successive postconviction action,
ECF No. 185, at PAGEID ## 9601–02, the Court proceeded to consider some of that
evidence and still rejected Petitioner's claim, *Id.* at PAGEID ## 9630, 9645–46, 9657–

## IV. CONCLUSION

For the foregoing reasons, Petitioner's Motion to Alter or Amend, ECF No.

187, is **DENIED**, and Petitioner's Motion to Supplement, ECF No. 190, is

**GRANTED**.

**IT IS SO ORDERED.**

**MICHAEL H. WATSON, JUDGE**
**UNITED STATES DISTRICT COURT**

---

58.